4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 In the Matter of OIL SPILL BY the "AMOCO CADIZ" OFF the
COAST OF FRANCE ON MARCH 16, 1978.
REPUBLIC OF FRANCE, Plaintiff,
v.
AMOCO TRANSPORT COMPANY, Defendant-Appellee.
Appeal of PETROLEUM INSURANCE LIMITED, Claimant.
 
 No. 92-3282.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 7, 1993.*
Decided Sept. 14, 1993.
 Before BAUER, Chief Judge, POSNER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 How many days are there in a year? Most of us would say 365, 366 in a leap year.[1] Bankers, however, often pretend there are only 360 days in a year, for reasons explained below. This case requires us to decide what kind of year should be used when calculating prejudgment interest. Is it a solar or calendar year (365 days) or a "bank year" (360)?
 
 I.
 
 2
 On March 16, 1978 the supertanker Amoco Cadiz broke apart and spilled thousands of tons of oil into the sea off the coast of France. Most of the issues in that case were resolved in Matter of Oil Spill by the Amoco Cadiz, 954 F.2d 1279 (7th Cir.1992) (per curiam) ("Amoco Cadiz I "). The Amoco Transport Company (Amoco) has paid over sixty-two million dollars in damages and interest as a result of that spill, and claims that all its accounts are settled. Petroleum Insurance, Limited (PIL), however, believes it is entitled to another $476,000 in prejudgment interest.
 
 
 3
 The discrepancy between Amoco's and PIL's calculation arises from different ways of measuring time in the interest formula: Interest = Principal X Rate X Time. Specifically, they disagree as to what number goes in the Time slot when computing the interest due for each year. PIL maintains that the correct factor is 365/360 (366/360 in a leap year), the actual number of days in the year divided by the number of days in a bank year. Amoco agrees that the denominator should be 360, but argues that the proper factor for calculating annual interest is 360/360. PIL's method produces five or six more days of interest each year than Amoco's. Since Amoco owes interest for twelve complete years and part of a thirteenth, PIL's method would give it sixty-four more days of interest than Amoco's, or nearly $476,000.
 
 
 4
 Some background on the competing methods. Because the Gregorian calendar makes it impossible to have both equal daily interest charges and equal monthly interest charges throughout the year, banks have developed three methods of computing interest. These are the 365/365 method (exact day interest), the 360/360 method (ordinary interest) and the 365/360 method (bank interest). American Timber & Trading Co. v. First Nat. Bank of Oregon, 511 F.2d 980, 982 n. 1 (9th Cir.1974); Comment, Legal Aspects of the Use of "Ordinary Simple Interest", 40 U.Chi.L.Rev. 141, 142 (1972); Kevin W. Brown & Kathleen E. Keest, Usury and Consumer Credit Regulation Sec. 4.2.3.4 (1987); Term Loan Handbook 41 (John J. McCann ed., 1983). Under the 365/365 method each day has the same interest charge; the bank simply divides the annual interest rate by 365 to get a daily interest factor, applied to each day of the year. Under the 360/360 method each month carries the same interest charge; every completed month is assumed to have thirty days, and accumulates one-twelfth of the annual interest. Interest for incomplete months is calculated by dividing the number of days by 360. At the end of a year both of these methods produce the same interest because in each case the calculation will be Principal X Rate X 1. Brown & Keest, supra, at 93.
 
 
 5
 The 365/360 method is a hybrid. Here the bank first divides the annual interest rate by 360 to produce a daily interest factor. It then applies that factor to each of the 365 or 366 days in the year, even though the borrower has paid the nominal "annual" interest due after 360 days. Thus this method generates five or six extra days of interest for the bank each year, increasing the effective interest rate for the calendar year by 1/72. Comment, supra, at 142.
 
 
 6
 As noted above, PIL argues for the 365/360 method while Amoco prefers the 360/360 approach. The district court sided with Amoco. It did so because it believed that our holding, "PIL is entitled to prejudgment interest at the rate of 12.31% per annum," Amoco Cadiz I, 954 F.2d at 1337 (emphasis added), meant PIL should receive a 12.31% return each calendar year, not each bank year, and that the 365/360 method could not be used because it would boost PIL's actual annual return over the 12.31% authorized by this court on appeal.[2] In re Oil Spill by the "Amoco Cadiz", 789 F.Supp. 268, 271 (N.D.Ill.1992). The court thus computed interest with the 360/360 method, believing it had to use this method because it had found, prior to the first appeal, that the parties should use a 360-day year to compute interest.[3] Not wishing to disturb that ruling, it reconciled it with its interpretation of "per annum" by using a 360/360 year.
 
 II.
 
 7
 District courts are allowed to exercise their discretion in deciding when to allow prejudgment interest and the proper rate of that interest. EEOC v. O'Grady, 857 F.2d 383, 391 (7th Cir.1988); United States v. Peavey Barge Line, 748 F.2d 395, 402 (7th Cir.1984). Since the choice between the 365/360 method and the 360/360 method affects the rate of return, that too should be a matter of discretion, though of course exercised with discipline and reason. Amoco Cadiz I, 954 F.2d at 1334. PIL, however, contends that the district court abused its discretion in two ways. First, it claims the decision to use a 360/360 year violated the law of the case since, according to PIL, the court had earlier adopted a 365/360 bank year. Second, it argues that a bank year is the standard measure for calculating interest and that use of a 360/360 year, being contrary to normal business practice, leaves them with an insufficient recovery.
 
 
 8
 Turning first to the law of the case doctrine, we begin by noting that "If a final judgment had been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge would be required to adhere on remand to the rulings he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court." Williams v. Commissioner of Internal Revenue, 1993 U.S.App. LEXIS 18817, No. 92-3961, slip op. at 2 (7th Cir. July 23, 1993); see also Williamsburg Wax Museum v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C.Cir.1987) ("[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."). This aspect of the law of the case doctrine is the strongest weapon in PIL's arsenal, as the district court acknowledged that prior to the earlier appeal it ruled that a 360-day year should apply and Amoco did not challenge that ruling.
 
 
 9
 The problem with this argument is that the district court's pre-appeal "ruling" was ambiguous. There are two kinds of 360-day years, a bank year (365/360), and a 360/360 year. The district court never specified which type of year it meant, though PIL argues that it was understood that the court meant a bank year. That may well be correct. See Comment, supra, 40 U.Chi.L.Rev. at 141-42 nn. 2 & 4 (stating that 365/365 and 360/360 years are both referred to as 365-day years, whereas a bank year is commonly called a 360-day year). But the transcript passages cited by PIL reveal that the court probably did not understand that it was using a banking term of art. Indeed, they show that it could have intended that the parties use the 360/360 method. When the court said it was adopting a 360-day year, it immediately followed by ruling that France could not recover interest for leap days in the three leap years of the interest period. R. 1 at 17. Yet the 365/360 method does include leap days; in leap years the proper fraction is 366/360. See David Thorndike, Thorndike Encyclopedia of Banking and Financial Tables 10-1.1 (3d ed. 1987); R. 6 at 2 (PIL's own calculations use a 366/360 figure for leap year). If the court had intended to approve the 365/360 method it would not have excluded leap days. Excluding them was more in line with the 360/360 method, which is oblivious to leap years.
 
 
 10
 Further, the court's decision after remand demonstrates that it never intended to adopt a bank year, and, indeed, was thinking of a 360/360 year all along. It observed that using a bank year "would pay interest on five more days than the annum of 360 days as defined by the court." 789 F.Supp. at 271. Thus the "annum defined by the court" must have been a 360/360 year.
 
 
 11
 So the district court never plainly adopted a 365/360 year, and its post-remand adoption of the 360/360 method did not contradict its pre-appeal ruling. The later ruling simply clarified a matter that had not been hotly contested before, but had suddenly become significant when brought into sharper relief by the parties' arguments on remand. Since consistent rulings do not violate the law of the case, Williams, No. 92-3691, slip op. at 4, PIL's first argument fails.
 
 
 12
 PIL's second argument is that use of a 360/360 year is flat-out wrong because it is counter to real-world business practice. PIL begins by noting that the prime rate, to which it is entitled under the holding in Amoco Cadiz I, 954 F.2d at 1335, is calculated by the Federal Reserve based on a 365/360 year. See Federal Reserve statistical release, Selected Interest Rates, "Bank Prime Loan" & n. 3 (Aug. 7, 1990); PIL App. at A41. To provide it with a true prime-rate recovery, then, PIL argues that the 365/360 method must be used to compute interest.
 
 
 13
 Amoco Cadiz I did not define "prime rate" as that set by the Federal Reserve, however, but as "the rate banks charge for short-term unsecured loans to creditworthy customers." 954 F.2d at 1332.[4] Thus the Federal Reserve's methodology is important only insofar as it reflects general practice in the banking industry. If all prime-rate corporate loans use the 365/360 method then PIL is entitled to recovery under that method, for only then would it be reimbursed at the market rate, just as if its "involuntary loan" to Amoco had been a regular business transaction. Id. If, on the other hand, both types of years are used, it would be difficult to fault the district court for picking the 360/360 method.
 
 
 14
 Unfortunately the information we have on this question is limited. All we have is PIL's reference to the Thorndike Encyclopedia of Banking and Financial Tables, supra, at 11-1.2, which states that the 365/360 method, or bank interest, is used for corporate loans. PIL asserts that bank interest should apply here because Amoco would have had to take out corporate loans with a 365/360 term had it not effectively borrowed PIL's money during the pendency of this case. See Amoco Cadiz I, 954 F.2d at 1332 (the best indicator of the market rate--the proper rate for prejudgment interest--is the rate the wrongdoer had available to it). Other sources confirm that bank interest is quite popular, especially on corporate loans. Comment, supra, at 143 ("The 365/360 method has been the standard method of interest calculation in the banking industry for the last two centuries."). A study by the Federal Reserve Board found that it was used by 82% of commercial banks on at least some loans. 117 Cong.Rec. 18538 (1971) (statement of Rep. Patman). Larger banks, the kind Amoco would seem most likely to deal with, used the method most often. Of banks with deposits over $1 billion, all used the 365/360 method for some loans, as did 93% of banks with over $200 million in deposits. Moreover, it was most frequently used for commercial loans, with 80% of the banks using it for loans of one year of less, while 64% percent applied it to loans for longer periods. As for the banks with deposits over $200 million, forty-nine of the fifty-three that used the method at all used it for corporate loans of less than one year. So Thorndike is generally correct; the 365/360 method, though not universal, is apparently the prevailing method in commercial loans. See also Bankers Desk Reference 512-13 (Robert A.W. Brauns, Jr. & Sarah W. Slater eds., 1978) (listing corporate loans among those that compute interest on a bank year). Yet the Federal Reserve study also found that the bank-year method is not universally, or even consistently, applied.
 
 
 15
 This practice [use of the 365/360 method] is not standard or uniform in any way. It varies among banks with respect to the types of loans or maturities of loans subjected to that practice. It varies even in many instances with respect to the type of loans to which the practice is applied, and it varies significantly from one part of the country to another.
 
 
 16
 117 Cong.Rec. at 18539.
 
 
 17
 Given this state of affairs, did the district court abuse its discretion by applying the 360/360 method? We do not think so. Prejudgment interest serves to compensate the plaintiff for the loss of the use of its money and to deter stalling by defendants. Ziaee v. West, 916 F.2d 1204, 1208 (7th Cir.1990). Because the exact harm to the plaintiff is hard to determine we are forced to use estimates and approximation to arrive at a reasonable, fair figure. For example, the ideal interest rate would be the market rate, but we use the prime rate as a proxy because it is easier to find and is at least a market-based estimate of the proper rate. Amoco Cadiz I, 954 F.2d at 1332; Gorenstein Enterprises v. Quality Care-USA, 874 F.2d 431, 437 (7th Cir.1989). Likewise, the prime rate varied throughout the course of this litigation, but for the sake of expediency we are using the average rate over that period, which the parties agreed was 12.31%. Just as these approximations and estimates are deemed sufficient to provide a fair return to the plaintiff, so too is the use of the 360/360 method. There is no "rule" that corporate loans use a bank year for interest; The only rule is to "follow the maker of the note." Thorndike, supra, at 11-1.2; Bankers Desk Reference at 512. Each bank, each borrower, and each loan may be different. Amoco may or may not have obtained loans under either interest method, so we cannot say that the use of either would be patently erroneous, or that the use of a 360/360 year will certainly undercompensate PIL. Accordingly, the district court's decision is
 
 
 18
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Claimant has filed such a statement. Upon consideration of that statement the court has concluded that oral argument would not be helpful and the appeal is submitted on the briefs and record
 
 
 [1]
 Actually there are 365 days, five hours, forty-eight minutes and forty-six seconds in each year--the interval between one vernal equinox and the next. Webster's Encyclopedia Unabridged Dictionary of the English Language 1654 (1989)
 
 
 [2]
 The 365/360 method would increase PIL's return for a calendar year to around 12.48%
 
 
 [3]
 The court did not actually state it was using the 360/360 method. Rather, is said that to reconcile its earlier holding with our requirement of per annum interest it would act as if no days existed after December 26. 789 F.Supp. at 271. The effect, however, is the same as if the court had explicitly adopted the 360/360 approach. Further, since the interest accumulated under this method is the same or higher (in partial years) than the 365/365 method, PIL cannot complaint that it is "losing" five days of interest a year. It will still get 12.31%, it just won't be able to use the 365/360 method to surreptitiously increase its return
 
 
 [4]
 See also Ben Berman, The Dictionary of Business and Credit Terms 156 (1984) ("Prime Rate: The lowest rate of interest charged by banks for commercial loans to 'best risk' business customers with the highest credit ratings."); Thibout deSaint Phalle, The Federal Reserve: An Intentional Mystery 11 (1985) ("But what is the prime rate and who sets it? Certainly not the Federal Reserve. The prime rate is that rate applied to first-class borrowers by banks. But banks are expected to compete, and hence even prime-rate setting by individual banks is of limited value."). Since the prime rate can vary from bank to bank, the interest method is also likely to vary